**IOWA REALTY OF PELLA, Appellee,**

v.

**BOOMSMA'S, INC., Appellant.**

No. 94–398.

Supreme Court of Iowa.

June 21, 1995.

William B. Serangeli and Michael E. Marshall of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellant.

M. Timothy Heerema, Pella, for appellee.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

The defendant, Boomsma's, Inc., the seller of a building and adjacent parcels of commercial real estate in Pella, Iowa, appeals from a judgment awarding a broker's commission on that sale to plaintiff, Iowa Realty of Pella. The seller urges that there was no enforceable agreement to pay a commission to plaintiff with respect to this transaction. After reviewing the record and considering the legal arguments of the parties, we agree with that contention and reverse the judgment of the district court.

The sale for which the district court awarded a commission to the plaintiff broker occurred in October of 1992. Prior thereto,

on June 9, 1992, the plaintiff broker had written a letter to the defendant stating as follows:

It is common real estate practice for the property owner to sign a letter of protection on behalf of the agency setting forth special effort in trying to move a particular property; in this case the "Boomsma Building".

We ask that you protect our interest in the following customers to whom your property has been shown.

1. Jim Levy—d.b.a. New Bury Development Co., Des Moines, IA.

2. Vince Blom—d.b.a. Central Electric & Private Housing, Pella.

3. Larry Lautenbach—d.b.a. Lautenbach Construction, Pella.

4. Larry Toom—d.b.a. Pella Industries, Pella.

Should one of the above parties purchase your property listed in Pella within the next six (6) months, we are asking you to consider Iowa Realty of Pella the listing and selling agent. Your property is currently listed at a commission rate of 7%. We will use the normal commission of 6% for the parties above.

Please sign below if these terms are suitable and return to our office.

The defendant signed a copy of this letter and returned it to the plaintiff's office. Subsequently, the defendant listed the property with another broker. After being released in writing from the terms of the latter listing agreement, defendant completed the October sale of the property through its own efforts. The buyer was Private Housing of Pella, one of the entities described in the broker's June 9 letter. The plaintiff's demand for a commission on the sale to Private Housing was refused by defendant, and an action was commenced to enforce that demand. Defendant, in its answer and throughout the trial, contended that there was no enforceable agreement to pay a commission.

Following the close of the evidence, the district court ruled that the June 9 letter was a written contract that followed the expiration of an earlier oral contract for the listing of defendant's property. Although the court recognized that the written agreement embodied in the June 9 letter omitted several of the elements required to be included in a listing agreement, it believed that the omitted items were all matters of which the seller was well aware. Consequently, it deemed that the June 9 letter was an enforceable agreement to pay a six percent commission on sale of defendant's property to the parties or entities listed in that letter within six months of the date thereof. Defendant contends that this ruling ignored the limitations on enforceability of listing agreements found in the administrative rules of the Iowa Real Estate Commission.

Two rules promulgated by the Iowa Real Estate Commission bear on the issue now before us. These are the following:

All listing agreements shall be in writing, properly identifying the property and containing all of the terms and conditions under which the property is to be sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date. It shall contain no provision requiring a party signing the listing to notify the broker of the listing party's intention to cancel the listing after such definite expiration date. An exclusive agency or exclusive right to sell listing shall clearly indicate that it is such an agreement. A legible copy of every written listing agreement or the written authorization shall be given to the owner of the property by a licensee as soon as reasonably practical after the signature of the owner is obtained.

193E Iowa Admin.Code 1.23.

To enforce a protective clause beyond the expiration of an exclusive listing contract, there must be a provision for the protective clause in the listing contract which establishes a definite protection period, and the broker must furnish to the owner prior to the expiration of the listing the names and addresses of persons to whom the property was presented during the active term of the listing and for whom protection is sought.

193E Iowa Admin.Code 1.19.

■ We have previously considered the provisions of 193E Iowa Administrative Code

1.23. In *Milholin v. Vorhies,* 320 N.W.2d 552 (Iowa 1982), we concluded that an almost identical rule of the Iowa Real Estate Commission rendered oral listing agreements unenforceable upon proper objection. *Id.* at 554. This principle was later reconfirmed in *Maynes Real Estate, Inc. v. McPherron,* 353 N.W.2d 425, 427 (Iowa 1984). Plaintiff contends that the *Milholin* and *Maynes Real Estate* cases are not controlling because they involved situations in which there was no writing of any kind. In the present case, plaintiff urges, there was a written agreement between the parties. It argues that, to the extent that this agreement omitted items that rule 1.23 requires in a listing contract, those matters were not necessary to the seller's understanding of its commission obligation.

We need not decide the extent, if any, that the omission of various items required to be included in a written listing agreement under rule 1.23 affects the enforceability of such an agreement. Considering the content of the June 9 letter agreement, we are convinced that it was not intended to be a listing agreement. It specifically identifies a listing agreement already in existence and implies that the letter agreement is designed to protect the broker's right to a commission beyond the period of the initial listing. It does not contemplate any additional services to be performed by the broker to assure that result. The language of rule 1.19 clearly provides that such a clause is not enforceable unless there is a provision in the original listing contract establishing a definite protection period. There was no evidence presented at trial indicating that there was any provision, written or oral, in the original listing contract establishing a definite protection period.

We approve the requirements of rule 1.19. Those requirements appear to track with basic principles of contract consideration. When a contract contemplates subsequent execution of a subsidiary agreement, promises in that agreement are supported by the consideration provided for the original contract. *Freese v. Town of Alburnett,* 255 Iowa 1264, 1271, 125 N.W.2d 790, 794 (1964). If, however, a subsidiary agreement is not contemplated in the original contract, and the original agreement is completed as to performance, a subsidiary agreement requires an independent consideration. *Insurance Agents, Inc. v. Abel,* 338 N.W.2d 531, 533–34 (Iowa App.1983).

We have considered all matters and issues presented and conclude that the judgment of the district court must be reversed. The case is remanded to that court for a judgment dismissing plaintiff's petition.

**REVERSED AND REMANDED.**